FILED

04/26/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 7, 2019

IN RE O.M. ET AL.

Appeal from the Juvenile Court for Claiborne County
No. 2016-JV-1902          Robert M. Estep, Judge

_____

No. E2018-01463-COA-R3-PT
_____

Department of Children's Services filed a petition to terminate the parental rights of father, J.M., with respect to his children, O.M. and K.M. The court held clear and convincing evidence exists to terminate father's parent rights on the ground of abandonment by an incarcerated parent, pursuant to Tenn. Code Ann. § 36-1-113(g)(1), and for failure to manifest an ability to parent, pursuant to Tenn. Code Ann. § 36-1-113(g)(14). By the same quantum of proof, the court held that termination is in the children's best interest. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Jordan Long, Knoxville, Tennessee, for the appellant father of O.M. and K.M., J.M.

No appearance by or on behalf of mother, S.M.

Herbert H. Slatery III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

Father's extensive criminal conduct and drug abuse has led to frequent incarcerations. The exact dates of all of his incarcerations remain unclear. However, it is

undisputed that father is currently serving a twenty-four year prison sentence, in Kentucky. His earliest eligibility for parole is February 2022.

On November 7, 2016, DCS investigated a report of drug-exposed children and sexual abuse. A DCS caseworker located the children at their paternal grandmother's house. The children stated that they had "lived with their grandmother for years because their mother wouldn't take care of them."

At the time of removal, DCS reported that the children were:

> extremely filthy. Their fingernails were caked with dirt. It was cold obviously. It was the wintertime. One of them was in sandals. Her toenails were extremely dirty. They had a smell of urine that came from them. Their hair was pretty nasty as far as it didn't look like it had been washed in a while.

While the children were dirty, the DCS caseworker noted that they did not have head lice or any other known ailments. The children were not malnourished. DCS determined that, due to her criminal history, the paternal grandmother was ineligible to have custody of the children. DCS sought, but was unable to find, a suitable relative to care for the children. The children were instead placed into state custody.

On November 9, 2016, DCS filed a petition alleging that the children were dependent and neglected. It was alleged that the children were drug exposed, lived in deplorable conditions, and that father was on the run from law enforcement and his whereabouts were unknown. On December 7, 2016, the children were adjudicated dependent and neglected.

DCS was eventually able to locate father; he was in jail in Bell County, Kentucky. During this custodial episode, he was incarcerated from around December 2016 to February 2017. During that period, a DCS caseworker mailed father a copy of the permanency plan and a copy of the criteria and procedures for the termination of parental rights. The caseworker spoke with father on the phone and reviewed the provided materials with him. On February 9, 2017, father signed the permanency plan and criteria and mailed them to DCS.

After his release, father was next incarcerated in Claiborne County, Tennessee. A DCS caseworker visited father and again reviewed the permanency plan and termination criteria with him. Father was told to contact the caseworker when he was released. He did not. Father never visited the children, and never contacted DCS to arrange a visit. Father also failed to provide financial support for the children.

The children have resided in their current foster home since July 3, 2017. The children are purportedly happy and doing well in their current placement. They participate in extracurricular activities and have bonded with their foster family. The children have expressed their desire to be adopted by the foster parents, and the foster parents wish to adopt the children.

On March 27, 2018, DCS filed a petition to terminate father's parental rights. On July 16, 2018, a hearing on the petition was held. The trial court heard in-person testimony from two DCS caseworkers and the foster parent, and telephonic testimony from father.

The court held that DCS had proven, by clear and convincing evidence, abandonment by an incarcerated parent for wanton disregard, pursuant to Tenn. Code Ann. § 36-1-113(g)(1). The court held that

> [Tenn. Code Ann. §] 36-1-102(1)(A)(iv) includes within that long sentence, comma, then 'or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.' Clearly, [father's] conduct of criminal activity that has led him to many incarcerations, including a current sentence of 24 years, is wanton disregard for the [children].

The court then held, by clear and convincing evidence, that father has failed to manifest an ability to parent the children, "because he has engaged in so much criminal activity that he cannot even argue that he has been out for four months to be able to parent his children." In reference to Tenn. Code Ann. § 36-1-113(g)(14), which states that termination of parental rights may be based upon a parent's failure:

> to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[,]

the court stated that "[i]f ever there was a sentence that was written by the Tennessee Legislature that applied to anybody, it applies to [father]."

By clear and convincing evidence, and pursuant to Tenn. Code Ann. § 36-1-113(i), the court also held that it is in the best interest of the children to terminate father's parental rights. Father appeals.

## II.

Father raises the following issues on appeal:

> Whether the trial court erred in holding that grounds exist to terminate father's parental rights.

> Whether the trial court properly determined that termination of father's parental rights is in the children's best interest.

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g)(2018). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

Tenn. Code Ann. § 36-1-113(g)(1) provides that termination of parental rights may be based upon abandonment by the parent, as defined in Tenn. Code Ann. § 36-1-102. In relevant excerpt, section 36-1-102 provides that abandonment exists when "the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child…."

-5-

Father argues that before "DCS was involved in the case, the children lived with their grandparents, where [father] would visit them every day, provide for his children financially, and was appropriate for the children." Father testified that, when he was not incarcerated, he visited the children at his parents' house regularly. Father admitted that his current lengthy incarceration renders him unable to visit the children.

At trial, when father was asked how he obtained money to provide for the children, as he alleges he did, he responded that:

> I'm not going to sugarcoat nothing. If I couldn't make money the honest way, I went to the only thing I knew and that was selling drugs.

He alleged that any money he made legitimately went towards the children; however, there is no evidence to suggest that father has earned a legitimate income since 2008.

It is clear from the record that father's history of incessant criminal behavior and drug abuse evinces a pattern of conduct that renders him unfit to parent. Father has been in and out of jail since 2008. His criminal activity and corresponding criminal convictions, include: a guilty plea for felony trafficking in a controlled substance in or near a school, in February 2009; a guilty plea for felony possession of a controlled substance and misdemeanor possession of a controlled substance, in February 2012; and a guilty plea for felony facilitation to commit burglary, in March 2014.

In addition, in August 2017, after the children entered foster care, father pled guilty to driving under the influence, felony assault, resisting arrest, and felony fleeing/evading police in the second degree; that same day, father also pled guilty to trafficking in a controlled substance in the first degree, convicted felon in possession of a handgun, giving an officer a false name or address, persistent felony offender in the second degree, possession of marijuana, and buying/possessing drug paraphernalia. In February 2018, one month prior to the termination petition, father pled guilty to trafficking in a controlled substance in the first degree and promoting contraband in the first degree, and buying/possessing drug paraphernalia.

Father's persistent criminal conduct and drug abuse evinces a wanton disregard for the welfare of the children. We hold, as a matter of law, that the evidence found by the trial court amounts to clear and convincing evidence supporting termination of father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(1).

## V.

Tenn. Code Ann. § 36-1-113(g)(14) provides for termination of parental rights when: (1) the parent fails to manifest "an ability or willingness to personally assume legal and physical custody or financial responsibility of the child" and (2) "placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." This Court has held that, "placing a child with a parent who ha[s] knowingly engaged 'in repeated criminal conduct that necessitated [the parent's] re-incarceration' would place the child at risk of physical or psychological harm." *In re Amynn K*. 2018 WL 3058280, at *15 (citations omitted).

As outlined in this opinion, father has failed to demonstrate any ability or willingness to personally assume legal and physical custody or financial responsibility of the children. It is clear that placing the children in father's legal custody would pose a risk of substantial harm to the children. Father's history is replete with drugs and crime. As a result, he is currently serving a twenty-four year sentence.

We hold, as a matter of law, that the evidence found by the trial court amounts to clear and convincing evidence supporting termination of father's parental rights, pursuant to Tenn. Code Ann. § 36-1-113(g)(14).

## VI.

We now focus on whether termination of father's parental rights is in the children's best interest. When considering the issue of "best interest," we are guided by the statutory factors set forth in Tenn. Code. Ann. § 36-1-113(i), which provides as follows:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006- 00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

None of the above enumerated factors were held by the trial court to favor father. Father has made no adjustments to his lifestyle. As recently as one month before DCS

filed its petition to terminate father's parental rights, father pled guilty to several criminal offenses. There are no indicia of a meaningful relationship between the children and father.

In addition, it is clear that removing the children from their current caretakers and physical environment would have a profoundly detrimental effect on their wellbeing. Regarding their current placement, the trial court stated that:

> [t]he [c]ourt is very impressed with the foster mother that has taken this stand and testified. She has done a wonderful job with these children. They are attached to her. They are bonded. She's taken care of their needs. She has provided a drug-free home, a safe home, and she's to be applauded. And, the [c]ourt appreciates the fact, that [father] even mentioned that and thanked her and her husband for taking care of the children.

Accordingly, we hold, as a matter of law, that the evidence found by the trial court to be credible amounts to clear and convincing evidence that termination of father's parental rights is in the children's best interest.

## VII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, J.M. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE